IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00109-WJM-CBS

MIKEAL STINE,
          Plaintiff,
v.

FEDERAL BUREAU OF PRISONS (AGENCY),
MR. DAVID ALLRED, Clinical Dir. ADX,
MR. BLAKE DAVIS, Warden ADX,
MR. MUNSON, Associate Warden ADX,
MR. A. OSAGIE, Physician Assist. ADX,
MR. R. HUDDLESTON, EMT/ADX,
MR. SMITH, Assist. Health Services Administrator,
MR. MANSPEAKER, Corr. Officer ADX,
          Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on "Defendants' Motion for Summary

Judgment" (filed September 14, 2011) (Doc. # 213) and numerous other Motions.  Pursuant

to the Order Referring Case dated March 11, 2011 (Doc. # 28) and the memorandum dated

September 14, 2011 (Doc. # 214), this matter was referred to the Magistrate Judge.[1]  The

court has reviewed Defendants' Motion, Mr. Stine's Response (filed September 29, 2011)

(Doc. # 242), Defendants' Reply (filed October 18, 2011) (Doc. # 257), Mr. Stine's Amended

Response (filed October 3, 2011) (Doc. # 245), Defendants' Reply to Plaintiff's Amended

Response (filed October 18, 2011) (Doc. # 257), all of the other pending Motions, the

exhibits, the entire case file, and the applicable law, and is sufficiently advised in the

_____

        [1]      Pursuant to additional memoranda, all pending Motions have also been
referred to the Magistrate Judge.

premises.

I.      Background

Mr. Stine is currently incarcerated at the United States Penitentiary, Administrative Maximum ("ADX") in Florence, Colorado.  Proceeding *pro se*, Mr. Stine filed the original Complaint on January 14, 2011 pursuant to 28 U.S.C. § 1331, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and § 2241.  (*See* Doc. # 1). Mr. Stine alleged four claims for violations of the Eighth Amendment based upon a denial of dental and medical care: "8th Amendment Violation/Re: Medical + Dental Care: Cruel + Unusual Punishment," "8th Amendment Violation/Medical Care not Provided for Serious Injury Cruel + Unusual Punishment," "False Imprisonment in Control Unit," and  "Unsafe Incarceration in Violation of Eighth Amendment."  (*See* Doc. # 1).

On February 1, 2011, Magistrate Judge Boland issued an Order reminding Mr. Stine of the filing restrictions that were imposed on him in *Stine v. Lappin et al.*, Case No. 07-cv-01839-WYD-KLM, *Recommendation aff'd and adopted*, 2009 WL 2848849 (D. Colo. Aug. 31, 2009).  (*See* Doc. # 9).  *See also In re McDonald*, 489 U.S. 180, 183–85 (1989) (limiting petitioner from proceeding *in forma pauperis* based on petitioner's abuse of judicial resources);  *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010) ("Federal courts have the inherent power to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances.") (citation omitted).  "Injunctions restricting further filing are appropriate where (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant must do to obtain permission to file an action; and (3) the litigant received notice and an opportunity to oppose the court's order

2

before it is instituted." *Ysais*, 603 F.3d at 1180 (internal quotation marks and citation omitted).  *See also Stine v. Lappin et al.*, Case No. 07-cv-01839-WYD-KLM.  Judge Boland noted that "[a]lthough Mr. Stine is aware of the requirements, he continues to engage in abusive litigation tactics by not complying with the requirements." (*See* Doc. # 9 at 2-4 of 6). While Magistrate Judge Boland acknowledged that "Mr. Stine continues to abuse the judicial process as is documented with specificity in Case No. 07-cv-01839-WYD-KLM," he directed that Warden Davis submit a statement "addressing the current provisions being made to assure that Mr. Stine is not in immediate danger of physical harm regarding his dental needs, specifically his abscessed teeth, and his medical needs, specifically his injured knee." (*See id.*).

Warden Davis filed his Response to Magistrate Judge Boland's Order on February 10, 2011.  (*See* Doc. # 13).  On March 7, 2011, District Judge Lewis T. Babcock dismissed from the Complaint Claims Two through Four and Defendants Federal Bureau of Prisons, Harley Lappin, Michael K. Nalley, Blake Davis, A. Osagie,  Patricia Rangel, Tina Sudlow, and D. Foster.  (*See* "Order to Dismiss in Part and to Draw Case to a District Judge and to a Magistrate Judge" (Doc. # 20)).  Judge Babcock concluded that Mr. Stine's dental claims required further review and ordered that "the dental claims Mr. Stine asserts against Defendant Dr. D. Allred . . . be drawn to a district judge and a magistrate judge, even though Mr. Stine has not complied with the restrictions set forth in Case No. 07-cv-01839-WYD-KLM." (*See* Doc. # 20).

Magistrate Judge Shaffer held hearings and took evidence regarding numerous motions on April 14, 2011, May 5, 2011, June 23, 2011, September 1, 2011, and September 9, 2011.  (*See* Courtroom Minutes/Minute Order (Docs. # 81, # 105, # 148, # 200, and #

209)).  The court permitted Mr. Stine to file the Second Amended Complaint ("SAC"), naming

as Defendants the Federal Bureau of Prisons ("BOP"), Dr. David Allred, the Clinical Director

of ADX, Mr. Blake Davis, the Warden of ADX, Mr. Munson, the Associate Warden at ADX,

Mr. A. Osagie, a Physician Assistant at ADX, Mr. R. Huddleston, an EMT at ADX, Mr. Smith,

the Assistant Health Services Manager at ADX, and Mr. Manspeaker, a Correctional Officer

at ADX.  (*See* Doc. # 153, filed on June 23, 2011).  Mr. Stine seeks injunctive relief and

various forms of damages.  (*See* Doc. # 153 at 22-25 of 46).  On August 25, 2011, the court

denied Mr. Stine's "Verified Emergency Motion for TRO and Preliminary Injunction" (Doc. #

35).  (*See* "Corrected Order Denying Plaintiff's Verified Emergency Motion for TRO and

Preliminary Injunction" (Doc. # 190)).


II.    Standard of Review

       Defendants move pursuant to Fed. R. Civ. P. 56 for summary judgment on all claims

in the SAC (Doc. # 153) for the reason that Mr. Stine did not exhaust his administrative

remedies.

       Summary judgment is proper when there is no genuine issue as to any
       material fact and the movant is entitled to judgment as a matter of law.  A
       dispute is "genuine" if the issue could be resolved in favor of either party.  A fact
       is "material" if it might reasonably affect the outcome of the case.
       A movant who does not have the burden of proof at trial must show the
       absence of a genuine fact issue.  By contrast, a movant who bears the burden
       of proof must submit evidence to establish every essential element of its claim
       or affirmative defense.  In either case, once the motion has been properly
       supported, the burden shifts to the nonmovant to show, by tendering
       depositions, affidavits, and other competent evidence, that summary judgment
       is not proper.  All the evidence must be viewed in the light most favorable to the
       party opposing the motion.  However, conclusory statements and testimony
       based merely on conjecture or subjective belief are not competent summary
       judgment evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180, 1182-83

(D. Colo. 2004) (citations omitted).

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant, including . . . summary judgment proceedings." *Hall Bellmon*, 935 F.2d 1106, 1110 n. 3 (10th Cir. 19910 (citations omitted). However, the court cannot be a pro se litigant's advocate. *Yang v. Archuleta*, 525 F. 3d 925, 927 n. 1 (10th Cir. 2008).

As the SAC has been sworn to under penalty of perjury (*see* Doc. # 153 at 22 of 46), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that conclusory allegations without specific supporting facts have no probative value." *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (internal quotation marks and citation omitted). *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) ("[A] verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e).") (internal quotation marks and citation omitted). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway v. Smith*, 853 F.2d 789, 792-93 (10th Cir. 1988).

Defendants move for summary judgment and submit evidence pertaining to Mr. Stine's failure to exhaust administrative remedies. After *Jones v. Bock*, 549 U.S. 199, 211 (2007), a failure to exhaust administrative remedies constitutes an affirmative defense which

must be pled and proved by defendants. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). As Defendants' Motion is properly supported, the burden shifts to Mr. Stine to show, by tendering competent evidence, that summary judgment is not proper. The court must determine whether Mr. Stine has met his burden of presenting specific facts to overcome Defendants' Motion.

III.     Analysis

Defendants move for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996, ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*, 532 U.S. 731, 731-32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level). "[A] claim falling within the imminent danger exception to 28 U.S.C. § 1915(g) must nonetheless meet the mandatory exhaustion requirements of 42 U.S.C. § 1997e(a)." *McAlphin v. Toney*, 375 F.3d 753, 755 (8th Cir. 2004) (citation omitted). Even where the "available" remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth*, 532 U.S. at 731 (holding that even where an inmate sought money damages and the grievance process did not permit such awards, exhaustion was required as long as there was authority to take some responsive action)).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*, 549 U.S. at 210-212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "To exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Oklahoma State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules, -- rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. at 218 (internal quotation marks and citation omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must do in order to exhaust his or her administrative remedies. *Id.*, 549 U.S. at 218 (citation omitted). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A.      Exhaustion of Administrative Remedies

The court may take judicial notice of the BOP's administrative process. *See Ray v. Aztec Well Service Co.*, 748 F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations); *Antonelli v. Ralston*, 609 F.2d 340, 341, n. 1 (8th Cir. 1979) (judicial notice taken of Bureau of Prisons' Program Statement). The BOP has a four-step administrative process that provides for review at the institutional, regional and national levels "through which inmates may seek formal review of an issue which relates to any

aspect of their confinement [with exceptions not pertinent to this case], if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10 -542.18. (*See also* Declaration of Clay C. Cook, Attachment 1 to Response to Motion for TRO and Preliminary Injunction (Doc. # 93-1) at ¶ 5). "[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a). Following informal attempts to resolve a complaint, the procedure requires that an inmate submit to the Warden "a formal written Administrative Remedy Request, on the appropriate form (B-9), 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The Warden must respond within 20 calendar days from the date the formal request is received and logged into the Bureau's Administrative Remedy Index. 28 C.F.R. § 542.18. If the 20-day period is insufficient to make an appropriate decision, the deadline may be extended once for 20 days, unless the request is determined to be an emergency that threatens the inmate's immediate health or welfare, in which case the Warden must respond no later than the third calendar day after filing. *Id.*

If unsatisfied with the Warden's response, the inmate may file "an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). The Regional Director must respond within 30 days, which period may be extended once for 30 days. 28 C.F.R. § 542.18. If unsatisfied with the Regional Director's response, the prisoner "may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The General Counsel must respond within 40 days, which period may be extended once for 20 days. 28 C.F.R. § 542.18. At any stage of the process, "[i]If the inmate does not receive a response

8

within the time allotted for reply, . . . the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.  The appeal to the General Counsel at the Central Office constitutes the final administrative appeal. 28 C.F.R. § 542.15(a).  An inmate may not raise issues in an appeal that were not raised in the lower level filing.  28 C.F.R. § 542.15(b)(2).

The BOP maintains information related to administrative complaints filed by inmates under the Bureau Administrative Remedy Program in a database called SENTRY.  (*See* Doc. # 93-1 at ¶ 7).  One of the functions of the SENTRY database is to track administrative remedy complaints and appeals, and it allows for a computerized search of complaints and appeals filed by a specific inmate.  (*See id.*).  The administrative remedy generalized retrieval index (Administrative Remedy Log) for a particular inmate contains information about all administrative remedy submissions filed by that inmate.  (*See id.* at ¶ 8).

Defendants present evidence that Mr. Stine failed to exhaust his administrative remedies as to the SAC.  Mr. Stine alleges in the SAC that there was a delay in his dental treatment "from Nov. 28, 2010 until Feb. 3, 2011" that "caused me substantial harm and unnecessary pain constituting Eighth Amendment violation [sic]."  (*See* Doc. # 153 at 13, 14 of 46; *See also* Doc. # 245 at 2-3 of 10).  Defendants argue that at the latest, Mr. Stine had 20 days from February 3, 2011, or until February 23, 2011, to formally initiate his administrative remedies, citing 28 C.F.R. § 542.14(a), and that he did not do so.

In the SAC Mr. Stine alleges conduct that occurred in several time periods.  Mr. Stine alleges that on June 14, 2010, Defendant Manspeaker failed to escort him to a dental appointment.  (*See* Doc. # 153 at 6 of 46).  Mr. Stine next alleges that on an unspecified date Defendant Osagie "at my door refused to see me. . ." and on January 7, 2011 did not address his complaint of "teeth infection." (*See id.* at 7 of 46).   He alleges that during "[t]he

9

rest of Jan. 2011 . . . Mr. Rogers, Vanderman, and Huddleston all stated we can't do anything for you. . ." (*See* Doc. # 153 at 8 of 46).  Mr. Stine also alleges that on February 6 and 9, 2011, he was denied medication by Defendants Huddleston and Osagie. (*See* Doc. # 153 at 9 of 46).  Mr. Stine next alleges that on March 17, 2011, he had "surgery to remove bone sticking out and extracted two teeth that had become abscessed because of delay from March 1st 2011 until March 17 2011." (*See* Doc. # 153 at 16 of 46).  Mr. Stine further alleges that on April 5, 2011, he sought assistance from EMT Rogers to make a medical appointment and that EMT Rogers refused. (*See* Doc. # 153 at 16 of 46).[2]  Mr. Stine was seen by the dentist the next day, on April 6, 2011.  (*See id.*).  Mr. Stine alleges that upon returning to his cell after a tooth extraction on April 6, 2011, his gum began bleeding and EMT Rogers refused to respond for three hours and refused to examine him.  (*See id.* at 16-17 of 46).  Finally, Mr. Stine alleges that on April 14, 2011, EMT Rogers refused to examine him and that his emergency requests on April 15 and 17 were denied until April 20, 2011. (*See id.*).

In his Amended Response to Defendants' Motion for Summary Judgment (Doc. # 245), Mr. Stine does not dispute that he failed to exhaust the claims in the SAC.  Rather, Mr. Stine argues that "staff refused to issue the required administrative remedy forms necessary to exhaust administrative remedy. . . ." (*See* Amended Response (Doc. # 245) at 3-4, 7 of 10; *see also* Doc. # 153 at 8 of 46 ("Mr. Foster, Mr. Madison fil[l]ing in for Mr. Foster and Ms. Tena Sudlow had all refused me administrative remedies on being refused dental since 11-28-2010 . . . .").  "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will

---

[2]      Mr. Rogers is not a Defendant in the SAC.  In his Motion to file a Third Amended Complaint, addressed *infra*, Mr. Stine seeks to add Mr. Rogers as a Defendant.

excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted). *See also Baldauf v. Garoutte*, 2005 WL 1499424, at *3 (10th Cir. June 24, 2005) ("[T]he plain meaning of 'available' indicates that if a prisoner is hindered from utilizing the grievance procedure, then that grievance procedure is not available."). The PLRA's exhaustion requirement thus may be excused where the prisoner is denied grievance forms. *See Baldauf*, 2005 WL 1499424, at *4. "[D]istrict courts are obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials before dismissing a claim for failure to exhaust." *Little*, 607 F.3d at 1250 (citation omitted). Mr. Stine argues that he should be excused from the PLRA's exhaustion requirement because personnel at ADX refused to give him grievance forms. Defendants respond that the evidence does not support Mr. Stine's argument that he was prevented from exhausting his administrative remedies.

Since June 1, 2010, the date on which the factual allegations in the SAC commence, Mr. Stine has filed a total of 22 administrative remedy requests or appeals. (*See* Third Supplemental Declaration of Clay C. Cook, attached to Mr. Stine's Response (Doc. # 242-11) at ¶ 4; *see also* 9-31 of 38). Defendants point to Mr. Stine's administrative grievances to support their Motion. Mr. Stine filed five administrative claims on July 27, August 2, August 5, and August 24, 2010, addressing legal mail, legal photocopies, the procedure for use of restraints, a request to see a "SIKH representative; materials," personal clothing not returned from the laundry, and the denial of photocopies. (*See* Doc. # 242-11 at 9-13 of 38; *see also* Doc. # 101 at 10 of 16). These administrative claims raise matters unrelated to the claims in the SAC. Further, Mr. Stine's administrative grievances pre-dating the complained-of conduct cannot support his allegation that he exhausted his administrative remedies. *See Ross v. Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) ("A grievance obviously cannot

11

exhaust administrative remedies for claims based on events that have not yet occurred."),

*overruled on other grounds by Jones*, 549 U.S. at 199.

Mr. Stine did not seek to exhaust the claims in the SAC until, at the earliest, January

4, 2011.  (*See* Doc. # 242-4;  *see also* original Complaint (Doc. # 1) at 21 of 47).  Mr.

Munson's response submitted by Mr. Stine does not demonstrate exhaustion of his claims at

all required levels prior to filing this civil action.  (*See* Doc. # 242-4).  Mr. Stine filed six

administrative claims from January 27, 2011 until April 25, 2011, addressing obtaining

photocopies, obtaining cleaning materials; indigent copy policies, prison library policies, and

obtaining copies of a report.  (*See* Doc # 242-11 at ¶¶ 5, 13; *see also* 14-19 of 38).  None of

these claims raised any issues regarding denial of dental care that are alleged in the SAC.

(*See id.*).

Mr. Stine first mentioned dental care in a grievance filed on April 25, 2011, more than

20 days after the events occurring during the period of delay alleged in the SAC.  (*See id.* at

¶ 13, 20 of 38).  On April 25, 2011, May 12, 2011, and June 29, 2011, Mr. Stine filed

administrative grievances claiming that he was not receiving care for problems with sutures

after dental procedures were performed.  (*See* Doc. # 242-11 at 20-21, 24 of 38).

Defendants provide an affidavit refuting Mr. Stine's allegation that during this time period he

was denied grievance forms.  (*See* Declaration of Roger Huddleston (Doc. # 159-2)).

In any event, these grievances are not related to the claims in the SAC.  (*See also* Doc. #

242-2 ("Response to Inmate Request to Staff Member (Cop-Out)" requesting policy limiting

BP-8 forms to one at a time, dated June 2011)).

On June 14, July 7, July 11, and August 4, 2011, Mr. Stine filed administrative

grievances requesting interferon treatment and monetary damages for hepatitis C.  (*See*

Doc. # 242-11 at 22, 26, 27, 29 of 38).  On June 27, 2011 and June 29, 2011, Mr. Stine filed

administrative grievances seeking that dental adhesive be provided free of charge.  (*See*

Doc. # 242-11 at 23, 25 of 38).  On August 4, 2011 and September 12, 2011, Mr. Stine filed

administrative grievances stating that dental surgery was performed without his consent.

(*See* Doc. # 242-11 at 28, 31 of 38).  These grievances do not pertain to the claims in the

SAC.  Further, Mr. Stine agreed that the issue of denture adhesive was resolved, as he was

provided denture adhesive in July of 2011.  (*See* audio recording of hearing held September

1, 2011).

　　　　Mr. Stine submits a handwritten purported BP-11 dated December 10, 2010 that he

alleges he filed at the National or Regional level.  (*See* Doc. # 242-5).  There is evidence in

the record that this handwritten document was not received at either the National or Regional

level.  (*See* Fourth Supplemental Declaration of Clay C. Cook (Doc. # 257-1) at ¶¶ 3, 4).  It is

dated "Wen. Dec. 10th 2010."  (*See* Doc. # 242-5).  The court may take judicial notice that

December 10, 2010 was a Friday, not a Wednesday.  *See Plotner v. AT&T Corp.*, 224 F.3d

1161, 1167 n. 1 (10th Cir. 2000) (taking "judicial notice of the days of the week upon which

the dates at issue fall").  The purported BP-11 is not addressed to any specific person.  Mr.

Stine does not demonstrate to whom he delivered it.  Giving notice of his claims by means

other than the prison's available grievance process does not satisfy PLRA's exhaustion

requirement. *Jernigan*, 304 F.3d at 1032.  Nor does the handwritten document show that Mr.

Stine exhausted his claims at all required levels prior to filing this civil action.

　　　　Mr. Stine presents the declarations of five inmates, Mark Allen, Richard Nunes,  Terry

Nichols, Tim Hume, and Willie Clark, that purportedly demonstrate that he was denied his

attempts to file administrative grievances regarding his claim for denial of dental treatment

from November 28, 2010, to February 3, 2011.  (*See* Docs. # 242-1, # 242-3, # 147 at 4-5 of

5).  First, the declarations do not sufficiently identify specific dates or individuals to support

Mr. Stine's burden on summary judgment.  (*See* Doc. # 242-1 ("During the months of Dec.

2010 and Jan. 2011 I heard Mr. Stine request BP/8 informal resolution on medical and dental

to all persons of the unit team including Mr. Foster and when Stine would make the requests,

the staff would ignore him and walk off not issuing him the requested administrative remedy

forms, . . .);  Doc. # 101 at 15 of 16 ("I overheard Inmate Stine . . . ask a unit team member

for a BP-8 informal grievance form for his dental/medical issues but was refused to be given

one.");  Doc. # 147 at 4 of 5 ("I have seen and heard various ADX staff . . . refuse and ignore

Mr. Stine's request for administrative remedy forms . . . .");  Doc. # 147 at 5 of 5 ("I have on

several occasions heard Stine request administrative remedies . . . and . . . they would just

walk away not providing the grievance . . . .")).  Evidence that Mr. Allen, Mr. Nichols, Mr.

Hume, and Mr. Clark "heard Mr. Stine request," "overheard Inmate Stine . . . ask," "heard

various ADX staff," and "heard Stine ask" constitutes inadmissible hearsay offered to prove

the truth of the matter asserted, that Mr. Stine was prevented from filing grievances.  *See*

Fed. R. Civ. P. 801, 802.  *See also Wright-Simmons v. City of Oklahoma City*, 155 F.3d

1264, 1268 (10th Cir. 1998) (noting that hearsay testimony may not be considered to oppose

a motion for summary judgment).   Mr. Nunes' requests "for administrative remedy on dental"

are not probative of Mr. Stine's failure to exhaust his administrative remedies.  (*See* Doc. #

242-3 ("I have ask [sic] my counselor Mr. Foster, and case manager, Mrs. Sedlow, for

administrative remedy on dental and they walk – away – ignoring my requests [sic] . . . .")).

Mr. Nunes addresses events occurring after his arrival at ADX on April 21, 2011, several

months after Mr. Stine had to pursue administrative remedies for the claims in the SAC.  The

declarations of Mr. Hume and Mr. Clark do not specify any dates.  These declarations do not

establish that Mr. Stine was prevented from exhausting all required steps of administrative

remedies as to his claim of denied treatment from November 28, 2010 to February 3, 2011.

Mr. Stine presents several handwritten purported administrative filings. *See* Docs. # 242-6, # 242-7, # 242-8, # 242-9, # 242-10).  Two of the handwritten documents were submitted directly to Dr. Allred, Clinical Director of ADX Heatlh Services, not in conformance with the grievance procedures.  Writing letters to prison officials is insufficient to exhaust administrative remedies.  *See Mills v. Garvin*, 2001 WL 286784 at *3 (S.D.N.Y. Mar.2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA").  *See also Jernigan*, 304 F.3d at 1032 (giving notice of his claims by means other than the prison's available grievance process does not satisfy PLRA's exhaustion requirement).  Nor do these documents show that Mr. Stine exhausted his claims at all required levels prior to filing this civil action.  One of the handwritten documents relates only to obtaining copies and not to the claims in the SAC.  (*See* Doc. # 242-8).  Two of the handwritten documents either were submitted or address matters that occurred several months after Mr. Stine was required to file administrative requests for the claims in the SAC. (See Docs. # 242-9, # 242-10).

Mr. Stine argues that "during the month of Jan. 2011," Defendants Davis and Munson "stopped at my cell and stated we will take care of it," which Mr Stine interprets to mean "(no need to tell the court or file anything)."  (*See* Doc. # 153 at 7-8 of 46).  Prison officials may be bound by their oral representations to inmates concerning compliance with the grievance process.  *See Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005) (stating that information prison officials provided to prisoner about grievance procedures was relevant in deciding whether available administrative remedies had been exhausted);  *Brown v. Croak*, 312 F.3d 109, 112 (3d Cir. 2002) (holding that prisoner's noncompliance with written grievance procedures did not constitute a failure to exhaust since prison officials had told him that

written procedures were not accurate).  However, Mr. Stine does not demonstrate that Defendants Davis or Munson specifically represented that he need not comply with the administrative remedy process with regard to the claims in the SAC.  Mr. Stine alleges that they "stated we will take care of it."  Mr. Stine interpreted this alleged comment as "(no need to tell the court or file anything)."  (*See* Doc. # 153 at 8 of 46).  Nor does Mr. Stine allege a specific date on which Defendants Davis and Munson spoke to him about his dental concerns.  (*See id.* at 7 of 46 ("During the month of Jan. 2011 . . .")).  Thus, Mr. Stine does not sufficiently demonstrate what time period may be excused.

Any grievances Mr. Stine filed after January 14, 2011, the date he filed the original Complaint, cannot support exhaustion of the required administrative remedies as to the claims brought in the SAC.  Exhaustion must occur before the filing of the lawsuit, not while it is pending.  *See Porter*, 534 U.S. at 523-25.  *See also Jernigan*, 304 F.3d at 1032-33 (10th Cir. 2002) ("[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies");  *Perez v. Hudson*, 2009 WL 1922574 * 2 (E.D. Tex. 2009) ("Claims should be dismissed in cases where an inmate filed a lawsuit without waiting for the process to be completed.") (citation omitted).  A prisoner does not comply with the exhaustion requirement by exhausting available remedies during the course of litigation.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).  Mr. Stine does not specifically demonstrate that he was denied forms before February 23, 2011, the latest date that he was required to file his administrative remedies pursuant to 28 C.F.R. § 542.14(a).

In sum, Defendants have fulfilled their burden pursuant to the PLRA to show that Mr. Stine did not exhaust his administrative remedies.  Defendants satisfy their burden with respect to the Rule 56 standard, showing that there is no issue of material fact in this case.

The burden then shifts to Mr. Stine to provide evidence of a triable issue of material fact. Even viewing the evidence in the record in a light most favorable to Mr. Stine and drawing all reasonable inferences in his favor, *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009), the court concludes that Mr. Stine has not established that he exhausted his administrative remedies as to the claims in the SAC.  Mr. Stine's argument that the grievance process was made unavailable to him is not supported by sufficient evidence in the record.  The record supports the affirmative defense that Mr. Stine did not exhaust his available administrative remedies for the claims in the SAC as required pursuant to the PLRA.   Defendants are entitled to summary judgment on the SAC.

B.     Mr. Stine's Motion to File Third Amended Complaint

Mr. Stine seeks to amend his SAC to add Defendants "Mr. Rogers, EMT/ADX," "Mr. Jon Matthes, DDS ADX," and John Does, among other allegations.  (*See* Docs. # 197, 197-6 (proposed Third Amended Complaint ("TAC")).  Mr. Stine alleges that Mr. Rogers refused to provide him Amoxicillin on or about February 9, 2011, refused to make a medical appointment on April 5, 2011, refused to assist him when his gums were bleeding on April 6, 2011, and refused to examine him on April 14, 2011.  (*See* Doc. # 197-6 at 11, 18, 19, 20 of 30).  Mr. Stine also alleges that on April 28, 2011, Mr. Matthes performed oral surgery without his consent.  (*See* Doc. # 197-6 at 7, 22 of 30).  Mr. Stine's proposed TAC (Doc. # 197-6) adds more allegations, time periods, and more defendants.

Motions to amend are committed to the trial court's discretion.  *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).  Although Fed. R. Civ. P. 15(a) requires leave to amend be given freely, that requirement does not apply where an amendment obviously would be futile.  *T.V. Communications Network, Inc. v. Turner Network*

17

*Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992) (citations omitted).  Where a

complaint, as amended, would be subject to dismissal, leave to amend need not be granted.

*T.V. Communications Network, Inc.*, 964 F.2d at 1028.  *See also Lind v. Aetna Health, Inc.*,

466 F.3d 1195, 1199 (10th Cir. 2006) ("A proposed amendment is futile if the complaint, as

amended, would be subject to dismissal.") (internal quotation marks and citation omitted);

*Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001) (In order to determine whether a

proposed amendment is futile, the court must analyze the proposed amendment as if it were

before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)).

First, Mr. Stine has not exhausted his administrative remedies as to his claims against

the Defendants he seeks to add.  (*See* Third Supplemental Declaration of Clay C. Cook

(Doc. # 213-1)).  In his Motion, Mr. Stine concedes that his claim against Mr. Matthes was not

exhausted at the time he filed his Motion.  (*See* Doc. # 197 at 4 of 6 ("Plaintiff at present

writing is awaiting second step of administrative remedy to be returned on Mr. Matthes

unauthorized surgery . . . .")).  For failure to exhaust, Mr. Stine's proposed amendment is

properly denied as futile.

Second, filing restrictions were imposed on Mr. Stine in *Stine v. Lappin et al.*, Case

No. 07-cv-01839-WYD-KLM, 2009 WL at 2848849.  (*See* Doc. # 9).  This civil action was

permitted to be filed despite Mr. Stine's failure to comply with the requirements of his filing

restrictions, based on the court's concern about the possibility of immediate danger of

physical harm related to Mr. Stine's allegedly abscessed teeth and his injured knee."  (*See*

*id.*).[3]  *See also Thompson v. Gibson*, 289 F.3d 1218, 1222–23 (10th Cir. 2002) (explaining

---

[3]      Mr. Stine's claim regarding his knee was dismissed.  (*See* Doc. # 20 at 3-4 of
6).  On April 14, 2011, Mr. Stine withdrew his "Motion Requesting . . . to Reinstate Medical
Knee Claim" (Doc. # 77) and indicated his intent to focus this case on his dental condition.
(*See* Courtroom Minutes/Minute Order (Doc. # 81)).

dismissal of frivolous action or appeal constitutes a "strike" and if three strikes are accrued, the litigant may no longer proceed *in forma pauperis* in any civil action filed in federal court unless he is in imminent danger of physical injury).  Mr. Stine also has at least three strikes under the PLRA.  *See Green v. Denning*, 2009 WL 484457, at * 2 (D. Kan. Feb. 26, 2009) (The PLRA includes a "three strike" provision which prevents a prisoner from proceeding *in forma pauperis* if the prisoner's litigation in federal court includes three or more cases dismissed as frivolous, malicious, or as stating no claim for relief.);  28 U.S.C.1915(g) ("3-strike" provision prevents a prisoner from proceeding *in forma pauperis* in bringing a civil action or appeal if "on 3 or more prior occasions, while incarcerated or detained in any facility, [the prisoner] brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.");  *Stine v. Lappin*, No. 07-cv-01839, 2009 WL at 2848849 (noting that Mr. Stine has at least four strikes); *Stine v. United States*, 2008 WL 2622766, at * 10 (D. Colo. June 24, 2008) (noting that Mr. Stine had three strikes against him pursuant to § 1915(g)).

The determination of whether a prisoner is in imminent danger of serious physical harm is made as of the time the prisoner seeks to file the complaint.  *Green v. Ortiz*, 2007 WL 552236, at *2 (D. Colo. 2007).  Mr. Stine has not made a showing that he is in imminent danger of serious physical harm related to the allegations in the tendered TAC.  Allowing Mr. Stine to allege additional claims against new defendants based on actions taken after the filing of his original Complaint would defeat the purposes of Mr. Stine's filing restrictions, filing fees, the three strikes provision of § 1915(g), and the imminent danger exception.  *See McAlphin*, 375 F.3d at 755  ("When an inmate's right to file i.f.p. claims is subject to the

'three-strikes' restriction in 28 U.S.C. § 1915(g), and the inmate is granted leave to proceed i.f.p. under the 'imminent danger' exception, the i.f.p. action must be limited to imminent danger claims that have been properly exhausted."); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D.Va. 2000) ("By folding these unrelated, new claims into an ongoing action, Scott attempts to circumvent paying the filing fee for a new civil action. He also escapes the preliminary screening requirement of 28 U.S.C. § 1915A and the possibility of obtaining a "strike," which would affect his ability to file future *in forma pauperis* actions.") (citation omitted);  *Green*, 2009 WL 484457, at * 2 (A prisoner's attempt to amend the complaint to allege incidents and name parties not part of the same transaction or occurrences as the claims asserted against the defendants named in the original complaint is improper as circumventing the PLRA's fee obligation and three-strikes provision) (citation omitted).  The proposed TAC is "permissibly disallowed" because it would contravene section 1915(g) and Mr. Stine's filing restrictions to allow him to add claims or Defendants to the present suit that he could not have brought separately.  *Walck v. Dunkerson*, 316 F. App'x 608, 609 (9th Cir. March 4, 2009).  Mr. Stine may not add unrelated claims or new defendants to this lawsuit.


C.      Mr. Stine's Motion for TRO/Preliminary Injunction

        On September 15, 2011, Mr. Stine filed his "'Verified Emergency' Motion for TRO/Preliminary Injunction/with Expedited Consideration, pursuant to Fed. R. Civ. P. 65," requesting an order to provide him at no cost "omeprazole 20 mg. caps," a generic medication used to treat gastroesophageal reflux disease.  (*See* Doc. # 222 at 7 of 17). Mr. Stine also seeks an order that he "be examined by a doctor of orthopaedics. . . ," among other things.  (*See id.* at 8 of 17).  Mr. Stine bases his requests for immediate injunctive relief on allegations of retaliation for exercise of his First Amendment rights and violation of his

Eighth Amendment rights by injury to his left wrist and denying or delaying access to medical treatment. (*See* Doc. # 222 at 3-5 of 17).

A party seeking a TRO or preliminary injunction "must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citation omitted). As these elements suggest, "the movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Little*, 607 F.3d at 1251 (internal quotation marks and citation omitted). Mr. Stine's request for preliminary injunctive relief is based on claims and Defendants that do not appear in any of his pleadings in this civil action. "A preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally." *Hicks v. Jones*, 332 F. App'x 505, 508 (10th Cir. June 17, 2009) (citation omitted). Mr. Stine seeks preliminary injunctive relief on matters unrelated to the allegations contained in the SAC. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 489–90 (3d Cir. 2000) (affirming denial of injunction where plaintiffs' harm was "insufficiently related to the complaint and does not deserve the benefits of protective measures that a preliminary injunction affords"); *Hicks*, 332 F. App'x at 508 (preliminary injunction and TRO properly denied when the request for such relief bore no relation to the merits of the inmate's claim); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (same).

Neither has Mr. Stine established the four required factors to obtain a TRO or preliminary injunction. Nor has Mr. Stine made a showing of imminent danger of serious physical injury, which he is required to do to comply with the restrictions imposed upon him prior to filing these new allegations of his acid reflux condition and injured wrist. Mr. Stine's

acid reflux condition has already been determined insufficient to support an allegation that he is in imminent danger of serious physical injury in order to comply with his filing restrictions. *See Stine v. U.S. Federal Bureau of Prisons et al.*, Case No. 11-cv-02665-LTB, 2011 WL 6119124, at * 2 (D. Colo. Dec. 8, 2011). (*See also* Doc. # 222 at 17 of 17).

Accordingly, **IT IS RECOMMENDED** that:

1.      Doc. # 213, filed September 14, 2011, "Defendants' Motion for Summary Judgment" be GRANTED and that judgment on the Second Amended Complaint (Doc. # 153) be entered in favor of Defendants and against Plaintiff.

2.      Doc. # 197, filed August 29, 2011, Plaintiff's "Petition Pursuant to Court Order Seeking Leave of the Court to File Third Verified Amended Complaint Pursuant to Fed. R. Civ. P. 15" be DENIED.

3.      Doc. # 222, filed September 15, 2011, Plaintiff's "'Verified Emergency' Motion for TRO/Preliminary Injunction/with Expedited Consideration, pursuant to Fed. R. Civ. P. 65" be DENIED.

4.      Doc. # 236, filed September 27, 2011, "Plaintiff's Verified Motion for Partial Summary Judgment on Liability Pursuant to Rule 56(c) + (d)" be DENIED.

5.      Doc. # 259, filed October 20, 2011, Plaintiff's "Motion Requesting Hon. William J. Martinez Certify that Magistrate Craig B. Shaffer's Order of Sept. 9, 2011 Denying Plaintiff's Verified Emergency Motion for TRO/Preliminary Injunction Doc. 136 Filed 6-6-2011" (emphasis in original) be GRANTED, as the parties consented to the Magistrate Judge's final disposition of Plaintiff's "Verified Emergency Motion for T.R.O. and Preliminary Injunction" pursuant to 28 U.S.C. § 636(c) and D.C. COLO. LCivR 72.2. (*See* Docs. # 195, # 160, # 54, # 39).

**FURTHER, IT IS ORDERED** that:

1.       Doc. # 50, filed March 28, 2011, Plaintiff's "Motion for Evidentiary Hearing to Show Defendant and Counsel Have Intentionally Submitted Fraudulent Declaration to Document (13)" is DENIED.

2.       Doc. # 196, filed August 29, 2011, Plaintiff's "Motion Requesting the Court Modify the Court's Order (Doc. # 148) Allowing Plaintiff to File Third Amended Verified Complaint with Good Cause" is DENIED.

3.       Doc. # 202, filed September 2, 2011, Plaintiff's "'Verified Motion for Protective Order' and Request Leave of the Court to File Said Motion" is DENIED.

4.       Doc. # 216,  filed September 14, 2011, Plaintiff's "Motion for Rule 11 Sanctions and Other Disciplinary [sic] this Court Deems Appropriate against Parties and Defense Counsel" is DENIED.

5.       Doc. # 223, filed September 15, 2011, Plaintiff's "Motion Requesting the Court Expedite, Emergency Verified Motion for TRO/Preliminary Injunction with Expedited Consideration pursuant to Fed. R. Civ. P. 65" is DENIED as moot.

6.       Doc. # 229, filed September 20, 2011, Plaintiff's "'Verified Emergency Motion for Court Order" is DENIED.

7.       Doc. # 235, filed September 26, 2011, "Plaintiff's Request the Court Grant Motion (197) filed 8-29-2011; and Motion (202) filed 9-2-2011" is DENIED as moot.

8.       Doc. # 256,  filed October 18, 2011, "Defendants' Motion to Stay Pending the Court's Ruling on Defendants' Motion for Summary Judgment (Doc. 213)" is DENIED as moot.

9.       Doc. # 260, filed October 28, 2011, Plaintiff's "Motion for Evidentiary Hearing by Televideo on Motion for Protective Order (Doc. 202) filed Sept. 2nd 2011; and Motion for

Motion for TRO/Preliminary Injunction (Doc. 222) filed 9-15-2011" is DENIED.

10.     Doc. # 267, filed November 25, 2011, Plaintiff's "Motion to Strike Alleged 'Expert Medical Reports' Pursuant to Fed. Rules of Evidence 702, 702, and 702 as Highly Prejudicial to Plaintiff" is DENIED.

11.     Doc. # 260, filed October 28, 2011, Plaintiff's "Motion for Evidentiary Hearing by Televideo on Motion for Protective Order (Doc. 202) filed Sept. 2nd 2011; and Motion for Motion for TRO/Preliminary Injunction (Doc. 222) filed 9-15-2011" is DENIED.

12.     Doc. # 270, filed December 12, 2011, Plaintiff's Request that "the Court Accept Attached Exhibit just Obtained in Support of Sanctions Requested by Pending Motion, against Defendants" is GRANTED and the court has reviewed Doc. # 270-1.

13.     Doc. # 273, filed January 19, 2012, Plaintiff's "Verified Motion for Protective Order and Take Judicial Notice that Defendants on Jan. 16th 2012 Allowed My Confidential Medical Records to be Searched + Read by Lt. Schuttor whom is not Medical Staff, Attorney, or otherwise Legal Assistant, and without My Consent Violating My Constitutional Right to Medical Privacy" is DENIED.

14.     Doc. # 276, filed January 24, 2012, Plaintiff's "'Verified Motion the Court Take Notice that the Name of the ADX Pharmacist Interfering with My Prescribed Medical Treatment is 'Pharmacist, Mr. Carlile' and Continuation Has Advance since Motion for TRO/Preliminary Injunction Filed around Second Week of Sept. 2011 and Request Expedited Evidentiary Hearing" is DENIED.

15.     Doc. # 278, filed January 30, 2012, Plaintiff's "Verified Motion of Astonishing Medical Facts that Defendant Discontinued Need Medication with Intent to Cause Plaintiff[']s Death and Serious Injury as Retaliation for Instant and other Litigations against BOP/ADX Staff Including Medical, Showing Need for Emergency Evidentiary Hearing on the Matters" is

24

DENIED.

16.     Doc. # 279, filed January 30, 2012, Plaintiff's Motion Requesting Attached

Declaration Be Filed in Support of Pending Motion for Preliminary Injunction Filed in or about

Second Week of Sept. 2011 by Plaintiff" is DENIED as moot.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th

Cir. 1995).  A general objection that does not put the District Court on notice of the basis for

the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the

magistrate judge's report and recommendation must be both timely and specific to preserve

an issue for de novo review by the district court or for appellate review." *United States v.*

*One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d

1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by

the District Judge of the Magistrate Judge's proposed findings and recommendations and will

result in a waiver of the right to appeal from a judgment of the district court based on the

proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195

F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's

recommendation *de novo* despite the lack of an objection does not preclude application of

the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining*

*Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the

Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado this 10th day of February, 2012.

BY THE COURT:


   s/ Craig B. Shaffer
United States Magistrate Judge